******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE MALIYAH M.*
(AC 45183)

IN RE OCTAVIA D.
(AC 45199)

IN RE EDGAR S. ET AL.
(AC 45369)

Bright, C. J., and Alvord and Elgo, Js.

*Syllabus*

The respondent parents in three separate cases appealed to this court from
the judgments of the trial court terminating their parental rights as to
their minor children. Because of the COVID-19 pandemic, the trials on
the termination petitions were held virtually, either in whole or in part,
via the Microsoft Teams platform, during which witnesses for the peti-
tioner, the Commissioner of Children and Families, testified remotely.
On appeal, the parents claimed that they were denied their rights to
due process under the fourteenth amendment to the United States consti-
tution because the trial courts did not first conduct an evidentiary hear-
ing to determine whether, under *State* v. *Jarzbek* (204 Conn. 683), there
was a compelling need for the petitioner's witnesses to testify remotely.
*Held* that the records of the three trials were inadequate under *State* v.
*Golding* (213 Conn. 233) to review the parents' unpreserved claims that
they were denied due process when the trial courts failed to conduct
hearings pursuant to *Jarzbek* before allowing the petitioner's witnesses
to testify remotely: because the parents never objected to the virtual
format of the termination trials on the ground that it violated their
constitutional rights to confront the witnesses in person, the trial courts
had no occasion to make findings of fact regarding the threat posed by
COVID-19 and whether that threat was sufficiently compelling to curtail
the parents' confrontation rights; moreover, the parents could not over-
come the inadequacy of the trial records by claiming that they had an
unqualified right to a hearing at which the petitioner would bear the
burden of establishing by clear and convincing evidence a compelling
governmental interest in presenting the witnesses' testimony virtually,
that claim having been rejected by our Supreme Court in *In re Annessa
J.* (343 Conn. 642); furthermore, even if the parents' claim was distinct
from that asserted in *In re Annessa J.*, it would fail under *Golding*, as
there is no constitutional right to a *Jarzbek*-type hearing ordered by a
trial court sua sponte.

Argued September 8—officially released November 22, 2022**

*Procedural History*

Petition, in the first case, by the Commissioner of
Children and Families to terminate the respondents'
parental rights with respect to their minor child,
brought to the Superior Court in the judicial district of
New Haven, Juvenile Matters, and tried to the court,
*Conway*, *J.*, and petition, in a second case, by the Com-
missioner of Children and Families to terminate the
respondents' parental rights with respect to their minor
child, brought to the Superior Court in the judicial dis-
trict of New Haven, Juvenile Matters, and tried to the
court, *Marcus*, *J.*, and petition, in a third case, by the
Commissioner of Children and Families to terminate
the respondents' parental rights with respect to their
minor children, brought to the Superior Court in the
judicial district of New Britain, Juvenile Matters, and
tried to the court, *Hoffman*, *J.*; thereafter, in the first

case, the court, *Conway, J.*, rendered judgment terminating the respondents' parental rights, from which the respondent father appealed to this court, and, in the second case, the court, *Marcus, J.*, rendered judgment terminating the respondents' parental rights, from which the respondent father appealed to this court, and, in the third case, the court, *Hoffman, J.*, rendered judgments terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*James P. Sexton*, assigned counsel, with whom, on the brief, was *Albert J. Oneto IV*, assigned counsel, for the appellants in Docket Nos. AC 45183 and AC 45199 (respondent fathers).

*Matthew C. Eagan*, assigned counsel, for the appellant in Docket No. AC 45369 (respondent mother).

*Evan O'Roark*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa Khan*, assistant attorney general, for the appellee in each case (petitioner).

*Opinion*

PER CURIAM. These three appeals present the same legal claim and involve similar, though unrelated, factual and procedural histories. In each appeal, the respondent parent appeals from the judgment of the trial court terminating his or her parental rights. On appeal, each respondent asserts the same claim—that the court "denied the respondent the due process of law under the fourteenth amendment to the United States constitution" when it conducted the termination of parental rights trial, either in whole or in part, virtually, via Microsoft Teams,[1] without first holding an evidentiary hearing to determine whether there was a compelling need for virtual testimony.

After the respondents filed their principal briefs in each appeal, this court granted the unopposed motions filed by the petitioner, the Commissioner of Children and Families, requesting that her brief be due thirty days after our Supreme Court issued its decisions in *In re Annessa J.*, 343 Conn. 642, A.3d (2022), and its companion cases, *In re Vada V.*, 343 Conn. 730, 275 A.3d 1172 (2022), and *In re Aisjaha N.*, 343 Conn. 709, 275 A.3d 1181 (2022), which involved claims similar to the claim in the present cases. Our Supreme Court issued those decisions on June 20, 2022, and we now conclude that *In re Annessa J.* is dispositive of the issue in the present appeals. Accordingly, we affirm the judgments of the trial courts.

In Docket No. AC 45183, the respondent father, Hector R.-B., appeals from the judgment of the court terminating his parental rights as to Maliyah M. on the ground of failure to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[2] In his brief, he represents that the termination of parental rights trial was a " 'hybrid' virtual proceeding, in which the respondent was present with counsel and a Spanish speaking interpreter in the courtroom, but all other participants except [the] child's counsel appeared virtually." On appeal, he claims "that he was denied the due process of law under [the] fourteenth amendment to the United States constitution at the partially virtual parental rights termination trial when the trial court dispensed with his right of physical confrontation without first holding an evidentiary hearing to determine by clear and convincing evidence that there was a compelling need for the petitioner's last four witnesses to testify against him virtually."

In Docket No. AC 45199, the respondent father, Jason D., appeals from the judgment of the court terminating his parental rights as to his minor child, Octavia D., on the grounds of failure to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i) and (E).[3] On appeal, he claims "that he was denied the due process of law under [the] fourteenth amend-

ment to the United States constitution at the virtual parental rights termination trial when the trial court dispensed with his right of physical confrontation without first holding an evidentiary hearing to determine by clear and convincing evidence that there was a compelling need for the petitioner's witnesses to testify against him virtually."

In Docket No. AC 45369, the respondent mother, Lymari O., appeals from the judgments of the court terminating her parental rights as to her four minor children, Edgar S., Jaden A., Jeomarye A., and Josue G., on the ground of failure to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i). She claims "that she was denied the due process of law under [the] fourteenth amendment to the United States constitution at the virtual parental rights termination trial when the trial court dispensed with her right of physical confrontation without first holding an evidentiary hearing to determine by clear and convincing evidence that there was a compelling need for the petitioner's witnesses to testify against her virtually."

Each respondent concedes that their claim is unpreserved and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Pursuant to *Golding*, a [respondent] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [S]ee *In re Yasiel R.*, [supra, 781] (modifying third prong of *Golding*). The first two steps in the *Golding* analysis address the reviewability of the claim, [whereas] the last two steps involve the merits of the claim." (Emphasis in original; internal quotation marks omitted.) *In re Annessa J.*, supra, 343 Conn. 656–57.

In *In re Annessa J.*, the respondent mother, Valerie H., appealed from the judgment of the trial court terminating her parental rights. Id., 650. Due to the COVID-19 pandemic, the trial had been conducted virtually, via Microsoft Teams, and, on appeal to this court, the respondent mother claimed, inter alia, that the trial court "violated her right to due process of law by precluding her from confronting witnesses in court and in person . . . ." Id. She conceded that her claim was unpreserved and sought review pursuant to *Golding*. Id., 661. This court determined that, "because Valerie did not ask the trial court to hold an evidentiary hearing on the need for a virtual trial, the record was inadequate

to review Valerie's unpreserved federal due process claim." Id., 651.

After granting the respondent mother certification to appeal, our Supreme Court agreed with this court that the record was inadequate to review her unpreserved claim. The court explained that, "[u]nlike her state constitutional claim, which did not require any factual predicates because she claimed an unqualified right to an in person trial, Valerie's federal constitutional claim is not based on an alleged unqualified right to confront the petitioner's witnesses in person under the fourteenth amendment to the United States constitution. Rather, Valerie claims that she had the right to do so 'in the absence of evidence demonstrating the existence of a compelling governmental interest sufficient to curtail the right.' Valerie thus acknowledges that there are certain countervailing governmental interests that may be sufficient to justify curtailing any constitutional right to in person confrontation. Indeed, to address the merits of Valerie's claim, this court would apply the three part test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The third part of that test requires us to consider the governmental interests at stake. . . . [T]he trial court explained that, '[d]ue to the COVID-19 . . . pandemic, the trial [on the termination of parental rights petition] was conducted virtually.' As a result, we would need to consider the specific factual circumstances surrounding the trial and the COVID-19 pandemic to properly evaluate Valerie's claim. As Valerie concedes, '[a]lthough the trial court referenced the COVID-19 public emergency as the reason for conducting the trial virtually, there was no actual evidence before the court that [SARS-CoV-2, the virus that causes COVID-19], threatened the health or safety of any of the persons involved in this particular case.' It is for this reason that the record is inadequate to review Valerie's unpreserved federal due process claim. Even if this court were to assume that Valerie had a right to in person confrontation in the absence of compelling countervailing interests, this court has no factual record or factual findings on which to base a determination of whether that right was violated or whether the trial court correctly concluded that the government's interests were sufficiently great to warrant conducting the trial virtually." (Citation omitted.) Id., 661–62. The court also rejected the respondent mother's contention that the lack of evidence in the record was not her burden to overcome under the first prong of *Golding*. Id., 662–63.

Similarly, in *In re Vada V.*, supra, 343 Conn. 738, the respondent parents appealed from the judgments of the trial court terminating their parental rights after a trial held virtually, via Microsoft Teams, during the COVID-19 pandemic. The respondents asserted an unpreserved claim that "the trial court denied them the right to physically confront and cross-examine the witnesses

against them at the virtual trial, thereby violating their right to due process . . . ." Id. Our Supreme Court again concluded that the record was inadequate to review the unpreserved due process claim, reiterating that, "even if [it] were to assume that there is a constitutional right to in person confrontation, there is no factual record or factual findings for [the court] to rely on to determine whether that right was violated or whether the trial court correctly concluded that the government's interests were sufficiently great to warrant conducting the trial virtually." Id., 740.[4]

After those decisions were issued, the petitioner moved to dismiss each of the present appeals, arguing that, because the records are inadequate to review the respondents' unpreserved due process claim "in the same way the respective records in *In re Annessa J.* and *In re Vada V.* were inadequate, the result must be the same." This court denied the motions to dismiss and, sua sponte, ordered the parties in each appeal to file supplemental memoranda of law addressing whether the judgments terminating the respondents' parental rights should be summarily affirmed in light of our Supreme Court's decisions in *In re Annessa J.*, *In re Vada V.*, *In re Aisjaha N.* and *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 435–41, 446 A.2d 808 (1982) (holding that respondent father's constitutional rights were not violated when he was unable to be physically present in courtroom for termination of parental rights trial but participated via telephone).

In their principal briefs, filed before our Supreme Court issued its decisions in *In re Annessa J.*, *In re Vada V.* and *In re Aisjaha N.*, the respondents in the present appeals contended that the trial court violated their right to due process by failing to hold a compelling needs hearing pursuant to *State* v. *Jarzbek*, 204 Conn. 683, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988), before allowing the petitioner's witnesses to testify remotely. In *State* v. *Jarzbek*, supra, 707, our Supreme Court held "that, in criminal prosecutions involving the alleged sexual abuse of children of tender years, videotaping the testimony of a minor victim outside the physical presence of the defendant is a constitutionally permissible practice if, and only if, the state proves by clear and convincing evidence a compelling need to exclude the defendant from the witness room during the victim's testimony."

In their supplemental memoranda of law, the respondents contend that their unpreserved constitutional claim is distinct from the one recently addressed by our Supreme Court because, "[u]nlike in *In re Annessa J.* and *In re Vada V.*, the issue to be resolved in [these] appeal[s] is whether the rule in [*Jarzbek*]—requiring the state to establish a compelling governmental need

by clear and convincing evidence at a hearing before the trial court may dispense with the right of physical confrontation—applies with equal force in parental rights termination trials . . . ." They argue that "[t]he distinction is significant because the only factual predicate required to resolve the constitutional issue . . . is the lack of a compelling needs hearing in the trial court, which factual predicate is supported by the record." The petitioner responds that the respondents' claim is another way of stating that the lack of evidence in the record as to a compelling governmental interest is not the respondents' burden to overcome, an argument our Supreme Court rejected in *In re Annessa J.* We agree with the petitioner.

In her brief to the Supreme Court in *In re Annessa J.*, the respondent mother cited *Jarzbek* in support of her due process claim and argued "that the right of physical confrontation under the due process clause is not limited to criminal cases but extends to civil matters, including parental rights termination cases, where state action threatens fundamental liberty interests. . . . Although the trial court referenced the COVID-19 public emergency as the reason for conducting the trial virtually, there was no actual evidence before the court that the COVID-19 virus threatened the health or safety of any of the persons involved in [the trial]. . . . [T]his lacuna in the record with respect to whether there was a compelling reason to curtail her right of physical confrontation was not [the respondent's] burden to overcome under the first prong of . . . *Golding*. Under *Golding*, it was sufficient for the respondent to show that she was denied the ability to confront physically the witnesses against her at the virtual trial, with the burden falling on the state to demonstrate that the record disclosed facts sufficient to justify an abridgment of the right." (Citation omitted.) *In re Annessa J.*, Conn. Supreme Court Briefs & Appendices, Third Term, 2021–2022, Appellant's Brief pp. 22–24.

In rejecting the claim that the lack of evidence in the record "was not her burden to overcome," our Supreme Court expressly held that the respondent mother's claim must be analyzed pursuant to the three part *Mathews* test. *In re Annessa J.*, supra, 343 Conn. 661. Because that test is fact intensive, the court held that her claim failed in the absence of an evidentiary record regarding the *Mathews* factors and that she indeed had the burden to ensure an adequate evidentiary record for review of her claim. In particular, the court explained: "During the trial, the petitioner and the trial court were never put on notice that Valerie objected to the virtual nature of the termination of parental rights trial on the basis that it violated her right to confront the petitioner's witnesses. . . . Because the trial court was not alerted to this right to confrontation issue, it did not have occasion to make findings of fact regarding the threat posed by the COVID-19 pandemic and whether that threat

was sufficiently compelling to curtail any constitutional right to in person confrontation. In such circumstances, the [petitioner] bears no responsibility for the evidentiary lacunae, and, therefore, it would be manifestly unfair to the [petitioner] for [the reviewing] court to reach the merits of the [respondent's] claim upon a mere assumption that [the factual predicate to her claim has been met]. . . .

"Not only would such an assumption be improper, but, because, under the test in *Golding*, [the reviewing court] must determine whether the [appellant] can prevail on his [or her] claim, a remand to the trial court would be inappropriate. The first prong of *Golding* was designed to avoid remands for the purpose of supplementing the record. . . . The parties agree that there is an inadequate basis in the record for the trial court to determine whether the government's interests warrant conducting a virtual trial. Thus, in order to make the requisite findings, the trial court, on remand, would have to open the evidence. In cases of unpreserved constitutional claims, this court consistently has refused to order a new trial when it would be necessary to elicit additional evidence to determine whether the constitutional violation exists. . . . Therefore, we agree with the Appellate Court that the record is inadequate for review of this claim." (Citations omitted; internal quotation marks omitted.) *In re Annessa J.*, supra, 343 Conn. 662–64.

In the present cases, just as in *In re Annessa J.*, 343 Conn. 661, the respondents acknowledge that their right to confrontation is not unqualified and agree that their due process claims must be analyzed pursuant to the three part test in *Mathews*. Furthermore, there is no dispute that they failed to object to the virtual format of the trial on the ground that it violated their right to confront the petitioner's witnesses.[5] Nevertheless, the respondents attempt to avoid the consequences of the inadequacy of the records by claiming that they have an unqualified right to a hearing at which the burden would be on the petitioner to demonstrate a compelling governmental interest pursuant to *State* v. *Jarzbek*, supra, 204 Conn. 707. According to the respondents, because the record establishes that no such hearing was held, this court may "review whether [they were] denied the due process of law when the trial court dispensed with [their] right of physical confrontation at the parental rights termination trial[s] without first determining by clear and convincing evidence at a special hearing that there was a compelling state interest that justified curtailment of the right."

The respondents, presuming that the rule in *Jarzbek* applies, then argue that the three part *Mathews* due process balancing test weighs in their favor because "[t]he state's interest in limiting [their] right of physical confrontation . . . was never established in the

record. The trial court never made a finding by clear and convincing evidence at a compelling needs hearing that there was an overriding state interest that justified abridging [their] right to confront physically the witnesses against them."

We see no meaningful distinction between the claim presented in the present appeals and the one rejected by our Supreme Court in *In re Annessa J.*, supra, 343 Conn. 662. In the same way that the respondent mother in *In re Annessa J.* invoked *Jarzbek* to claim that the inadequacy of the record was not her burden to overcome, the respondents here rely on *Jarzbek* to disclaim their burden under the first prong of *Golding* by claiming that the constitutional error was the trial court's failure to make a finding, sua sponte, as to an issue the respondents failed to raise. As our Supreme Court explained, however, "[b]*ecause the trial court was not alerted to this right to confrontation issue*, it did not have occasion to make findings of fact regarding the threat posed by the COVID-19 pandemic and whether that threat was sufficiently compelling to curtail any constitutional right to in person confrontation." (Emphasis added.) Id., 663. In other words, the trial court had no duty to make findings of fact relevant to the right of confrontation issue when that issue never was raised before the court. Thus, our Supreme Court necessarily rejected the present claim, which seeks to impose such a duty. Merely recasting the claim as involving an unqualified right to a *Jarzbek* hearing instead of relying on *Jarzbek* to argue that they had no burden to overcome the lack of evidence in the record does not alter our analysis. Consequently, for the same reason that the respondent mother's claim in *In re Annessa J.* failed under *Golding*'s first prong, so, too, does the respondents' claim in the present cases.

Furthermore, even if we were to treat the respondents' claim as somehow different from that asserted in *In re Annessa J.*, the result would be the same. By rejecting the respondent mother's argument in *In re Annessa J.* that, pursuant to *Jarzbek*, the burden was on the petitioner "to demonstrate that the record disclosed facts sufficient to justify an abridgment of the right [of physical confrontation]," the court necessarily determined that there was no constitutional right to a sua sponte *Jarzbek*-type hearing. Consequently, insofar as the respondents' claim is distinct from the respondent mother's claim in *In re Annessa J.*, it fails under the third prong of *Golding* because they have failed to establish that the alleged constitutional violation exists. See *In re Tayler F.*, 296 Conn. 524, 554, 995 A.2d 611 (2010) ("[a] due process violation exists only when a claimant is able to establish that he or she was denied a specific procedural protection to which he or she was entitled" (internal quotation marks omitted)).

The judgments are affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142

(b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 22, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Microsoft Teams is "collaborative meeting [computer software] with video, audio, and screen sharing features." Connecticut Judicial Branch, Connecticut Guide to Remote Hearings for Attorneys and Self-Represented Parties (November 23, 2021) p. 5, available at https://jud.ct.gov/HomePDFs/ConnecticutGuideRemoteHearings.pdf (last visited November 22, 2022).

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition [for termination of parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] Subparagraph (E) of § 17a-112 (j) (3), in relevant part, provides for the termination of parental rights when "the parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ." General Statutes § 17a-112 (j) (3) (E).

[4] In *In re Aisjaha N.*, the respondent mother raised a due process claim distinct from the one raised by the respondents in *In re Annessa J.* and *In re Vada V.* In *In re Aisjaha N.*, the respondent claimed "that she was denied due process of law . . . when the trial court failed to ensure that she was present by two-way video technology at the virtual trial." *In re Aisjaha N.*, supra, 343 Conn. 717. Our Supreme Court held that the record was inadequate to review the respondent's unpreserved due process claim "[b]ecause the record [was] largely silent regarding the nature of [the respondent's] participation in the virtual trial . . . ." Id., 721. Accordingly, *In re Aisjaha N.* is not relevant to our resolution of the claim in the present appeals.

[5] We note that, in AC 45183, the respondent father filed an "objection to virtual termination of parental rights trial," claiming that conducting the trial virtually would deprive him of his due process rights in myriad ways, including by denying him the right to confront in person the witnesses against him. At a hearing on October 29, 2020, however, his counsel did not advance that claim in support of the objection. Instead, counsel argued that the respondent required a Spanish interpreter but that there was no procedure for providing simultaneous, as opposed to consecutive, interpretation over the Microsoft Teams platform. At the hearing, the following colloquy occurred between the court and the respondent's counsel:

"The Court: . . . [W]hat's your position if you and your client were put in a [courtroom] and were able to access an interpreter for simultaneous interpretation, not consecutive?

"[The Respondent's Counsel]: Would the interpreter be assisting my client in [the] courtroom . . . also?

"The Court: There—this is hypothetically; yes.

"[The Respondent's Counsel]: I'm trying to think to make sure the—so, [he] would be getting an interpreter interpreting what's going on with the trial; is that correct?

"The Court: So, theoretically, all right, your client would have headphones on . . .

"[The Respondent's Counsel]: Let me. I'm trying to see what—if there's issues with that.

"The Court: All right. So, this is all hypothetical. So, I agree that this

concurrent or nonconsecutive interpretation is not feasible in a trial of this complexity. I am hoping that in the next months, because we are scheduling out now until next year, that we have innovation in our technology that will permit simultaneous interpretation by an interpreter. If we get that type of technology, what I need to have answered, [counsel], is, will that obviate your concerns and objections?

"[The Respondent's Counsel]: I think the—I think the uniformity of the procedure, the input of the Limited English Proficiency Committee, just—and I think that it would be vetted so that it's a uniform process . . . that's just the concern I have, is, you know, I'd like to see what the procedures is of, you know, what it looks like."

After hearing from all the parties involved, the court ruled as follows: "I think the bigger issue that we have to resolve is the simultaneous interpretation. And so at this point, having heard from the parties, the court makes a finding that, based on the complexity of this trial, meaning the number of days of the trial that are left to be had, the number of witnesses that are left to testify, the additional documentary evidence that may be forthcoming, and the fact that this is a termination trial, and up to it not being a case that is not conducive to being tried virtually unless and until we have the ability to have the interpreter interpret simultaneously. So, I am—to the extent [the] objection relates to the [consecutive] interpretation during the [termination] trial, the court agrees, but the court also will pursue a virtual trial with accommodations, use of the courtroom here, use of one or more interpreters, assuming we can get the interpretation to occur simultaneous with the testimony."

After scheduling tentative dates for the virtual trial, the court stated: "All right. And . . . just so everyone's clear on the court's order, assuming we have the ability and the technology in February and March of 2021, this trial will be conducted virtually if simultaneous interpretation to accommodate [the respondent] father's needs can be effectuated. Anything else today?"

The respondent's counsel, along with counsel for all parties involved, responded in the negative, and the court adjourned. Thus, although the respondent's counsel raised the right to confrontation in his written objection, he failed to advance that claim at the hearing on his objection and, instead, seemed to accept the court's solution of in-court concurrent interpretation. On appeal, the respondent father concedes that his due process claim based on his right of confrontation was not preserved.

--------------------------------